May it please the court, Ms. Coleman. I am David Schloss. I represent the appellant and defendant below, Joseph Ziegler. We have two issues we are raising before this court. First, that the district court erred in finding Mr. Ziegler competent and allowing him to represent himself at a felony trial. And second, that as to both counts of the indictment, the government failed to attest to count one, failed to prove that Mr. Ziegler acted as an assistant U.S. attorney during his encounters with the witnesses who testified. And as to count two, that government failed to prove that he demanded a thing of value by asserting his authority as an employee of the United States government and assistant United States attorney. Turning first to the issue of competence. I think first, looking at the standard you have, but the dusky standard for competence to stand trial, I don't think Mr. Ziegler necessarily even passed that. That requires both a factual and a rational, and I stress the rational understanding of the proceedings against him. I think if you review the transcript of all the court proceedings, beginning with the motion hearing on his motion to represent himself through the trial, it is clear Mr. Ziegler lacked a rational understanding of the proceedings. He may have understood the facts. He had a rather bizarre interpretation of the facts, but he may have understood them. He did not have a rational understanding of the proceedings. So I think either under dusky, which Godinez-Moran has stated is the standard that applies in a waiver of counsel. Now we get to Indiana versus Edwards. Indiana versus Edwards has held a Supreme Court case that a district court, it was a state case, but by interpolation, a federal district court may, does not require, but may apply a higher standard for competence where the defendant wishes to represent himself at trial. I note here that in this case, at no time did Judge Faber inquire as to the mental condition and competency of Mr. Ziegler. He went through the column. He asked all the questions. Just the answers and the demeanor of Mr. Ziegler during that clearly raised reasonable cause, which is the issue. Mental illness is not... Counsel, can I ask you just to talk for a minute about the defense counsel's representations here? You know, one of the challenges that I think district court judges face in making these and that this district court had had at the time the initial decision was made. So here we have the defense counsel explaining that he has, despite his interactions with his client, you know, in private and off the record, that he has no concerns about his competence. Your Honor, I believe what Mr. Bungard stated at the initial hearing on the motion for self-representation is that I have no reason to question his legal competency at this time. All right. I'll take your quote, right? I'm not sure that's different than my paraphrase, but I'll take your quote. And so, you know, we've had a number of cases that seem to suggest under 4241A that whether there's a reasonable cause, perhaps the best person, the best vantage point is the defense counsel. Not during a hearing, right? That's a different question. But for whether there's a hearing should take place, the court can rely heavily on the defense counsel, at least in the context of where the defense counsel says, I have no reason to question their competence. I mean, the defense counsel is the one who has the most interaction with the client at the point that we're talking about there. And so why given that was the district court required to do more? Well, Your Honor, I think there's a couple reasons. First, I agree the defense counsel would have had more contact with Mr. Ziegler at that point than anyone else involved in the case. But I don't think that's the end of the discussion. First of all, the judge still has to use his own perception and his own observations. Secondly... So let me stop you and ask you about that. Because then we get to the morning of trial at J316, where they've now gone through a suppression hearing. The district court now has had the opportunity to interact in some significant amount with the defendant. And there, the trial court does sort of say, well, you know, in essence, I've now had a chance to see him. And I find no reasonable cause to hold a competency hearing. So we now have a situation where the lawyer early on says, I have no reason to doubt his competence, continues to hold that position the morning of trial, a standby counsel, and the district court makes that finding. And I've not found any example where we have those two together, where there's ever been any serious question about whether the standard under 4241A has been satisfied. Where the counsel agrees with the district court's own evaluation that then required a competency hearing on the abuse of discretion standard that we have. So help me understand how we get over those. Well, Your Honor, first I will point out, as a defense lawyer, we have a duty of loyalty to our client and to pursue our client's interest. We're not necessarily bound by our duty of candor to the court. Mr. Bungard was very careful not to state on the morning of trial. What he said is, I believe the court has already found Mr. Ziegler competent and made that decision. And the court, Judge Faber recognized that he said, because it was at the request of Mr. Hasselbad that Mr. Bungard was asked to respond. And Judge Faber said, you're putting him on the spot. And you are on the spot. It's a complex legal and ethical question for a defense lawyer there. And I don't think we can say, well, the defense attorney did not ask for a competency hearing and an evaluation. Case closed. I think. I agree with that. But here we have an affirmative statement by defense counsel. And then we have an affirmative statement by the trial judge having observed him. I understand your point is that, you know, if the defense counsel wanted to say, Your Honor, I don't think I can answer that question because I have a conflicting ethical obligation of candor and loyalty. All right, fine. Silence is one thing. We have an affirmative statement by the lawyer. And we have an affirmative evaluation by the district court. And we have an abusive discretion standard. I mean, that's what I'm trying to get you get sort of some thought on Are there any examples you can point me to, A, where that's been enough? But B, why would that not be enough? Because, Your Honor, the court did have two hearings and colloquy or whatever you want to call it, the morning of trial, where Mr. Ziegler clearly and repeatedly demonstrated that he lacked a rational understanding. We also have a case where it was a documented history of mental illness in his background. He'd been diagnosed with bipolar disorder, with post-traumatic stress syndrome, and he's manifesting symptoms of mental illness in front of the court. Now, that mental illness is not synonymous with incompetence, but it is a crucial factor to weigh in determining whether a competency hearing and an evaluation is necessary. The judge made no findings as to what standard he was applying. He never mentioned Indiana versus Edwards, never mentioned whether he was applying the gray area, higher standard, or he was applying the dusky standard. He didn't give his basis for finding him competent. He just said, I find him competent as a conclusory statement. I believe that he isn't. Counsel, excuse me. Diana Motz, can I interrupt you for a second? Leaving aside for a minute, Judge Richardson's good points about what the defense lawyer said or the defense lawyer in helping him said and what the trial court said, suppose that we then, in any event, I suppose, have to look at what happened at trial. I trust that you have read the record. You weren't counsel, but you read the record, haven't you? Yes, of course. Well, I don't think he did such a bad job for himself. I thought he did a better job than a lot of lawyers that come to us have done. Now, he is an unusual person, to be sure, but I don't know that the representation that he gave was faulty, so maybe you could help me there. Well, Your Honor, my view of the record is that Mr. Ziegler was fixated on matters that were completely irrelevant to the charges against him in federal court. Let's get past the point that he wanted to ask every question, was this in your report, was this in your report, which Ms. Coleman tore him apart because it was my question a little more pointed because I don't think it was. He certainly did things that would annoy a judge and that were unnecessary, maybe, but look at what he did to help his case. And that's, I mean, I think maybe how we gauge, we look at all the things that he did together. And so that's why I'm, first of all, do you think that we look at what happened at trial, even though we have these preliminary assessments by the district court and his standby counsel? Yes, I do, Your Honor, and I believe prior to trial. I'll say from the first time he appeared in court and spoke through the completion of the trial, I believe that he clearly demonstrated there was reasonable cause to question his competency. Okay, can you tell me, I'm not about irrelevant issues. I'm asking you if you can give me a couple of examples of how he hurt his case, his defense, to what he was being tried for. Well, one thing that I noticed during jury selection, he told the woman she had cereal in his hair and it was a mole on her face, which is arguing with the judge. Wait, wait, wait, let's be careful because we've all been in courtrooms and to say that pompous, grandiose and arguing with the judge is a problem eliminates lots of lawyers too. That's true, but I'm not defending him. And a handful of judges, to be fair. I'm not saying every lawyer is necessarily competent, but the Sixth Amendment is not the counsel. The counsel do not. I believe that an objective view of the record clearly established his reasonable cause. And that's what I'm arguing, that it was an abuse of discretion not to recognize the reasonable cause in light of the particular facts and the totality of the circumstances surrounding this case to find that he at least needed to be evaluated. Bernard, Judge Diaz was on that panel and dissented. Mr. Bernard had two evaluations in two competency hearings, was found restored to competence, and the judge made specific findings in that case. Here, it's just like, I find he's competent. On what basis was he competent? Mr. Schloss, can I ask a question since you brought up my name? So how are we to consider, if at all, the fact that, and I think this came up in the record, Judge Faber talked about it, that the defendant in this case had in a separate trial in, I think it was Rhode Island, chosen to represent himself and then on appeal claimed that he was on that ground. So how does that cut one way or the other in this case? I mean, I suppose one can say maybe Judge Faber should have been on notice that there might've been something amiss here that he needed to look into to be sure they didn't fall into the same trap with respect to a competent, incompetent defendant, or perhaps Mr. Siegler is just crazy as a fox and is engaging in a tactic that he hopes might succeed on in this appeal. Well, to answer your last question first, I think that would be giving Mr. Siegler too much credit from strategic thinking. I don't think he was sandbagging or setting a trap for the court. I think Mr. Siegler believed he was competent and not just competent, but brilliant. He was mistaken in that belief because of his irrational perception. As to the, it was a Michigan case, and that case was a little different because Michigan has a fairly specific warning that the trial judge must give to the defendant. And the holding was entirely based on the judge didn't give the rote warnings that we require. It wasn't really based on Mr. Siegler's mental state per se in the Michigan case. Well, but as Judge Diaz points out, the district judge did bring this up to the defendant and said to him, you're not going to do that here, are you? Oh, no, no, no, no. That's absolutely correct. There's no question that's how it went. And my argument is that's another manifestation that raises reasonable cause to question his competency to a degree that called for an evaluation and a competency hearing. And I believe it was an abuse of discretion. And over my time, I did not get to the other issue. Do my colleagues have any questions? Then we'll go right to them. Well, I think you have some time for rebuttal. Thank you, Your Honor. So, Ms. Coleman. Thank you, Your Honor. May it please the court, counsel. The record in this case is clear that Mr. Siegler's waiver of his right to counsel was clear, voluntary, knowing, and intelligent. The district court engaged Mr. Siegler in a thorough discussion about his right to counsel. There was an ex parte proceeding before the court went over his waiver in court. And during that ex parte proceeding, the defendant's attorney stated that he had no reason to question the defendant's competency. Thank you. The district court then comes back onto the record and goes over Mr. Siegler's waiver. I would note to this court that that waiver, that exchange between Mr. Siegler and the district court encompasses pages 27 through 38 of the JA. It's very extensive. The district court went over Mr. Siegler's understanding of the charges against him, of the penalties he faces, of his understanding of the trial process, his familiarity with legal proceedings, his familiarity with the rules of criminal procedure and evidence. Ms. Coleman? Yes. I think we know all of that. And indeed, I think that Judge Richardson pretty much established the best that you get from the various warnings and early decisions by defense counsel and the district court. But you wouldn't argue to us that we don't look at what happened at trial, would you? I would not. But I think when you look at what happened... Okay, so we were assuming all those things happened before. So the question is, at trial, did the defendant exhibit such behavior that the district court, clearly, the district court abused its discretion in not calling for a hearing on this? No, Your Honor. At trial and at the suppression hearing, this defendant called witnesses. He objected. He had objections that were sustained. He presented evidence on his own behalf. He did an opening statement. He did a closing statement. He cross-examined each of the government's witnesses. He tried to impeach their credibility through inconsistencies. He clearly knew what the charges were, what he was facing. And while he may have had other extraneous things going on, he was able to competently represent himself. He did so, not to the degree that a trained attorney would do, but that's not the standard. The standard is, was he competent to represent? Was he competent? And there was no indication at trial that he was not competent. The district court was in the best position to see him and observe him. He wasn't, he is a strange individual and has some strange ideas, but he knew the legal proceedings against him and he handled them in a way an attorney would. And so, I think that if you look at the record of the trial and how it proceeded, there would be no reason for the Ms. Coleman, just because I'm curious about it and I don't at all disagree with your answer, but help me understand why we look at the trial. You know, the question is whether, why is it that we look at the trial as opposed to that we look at the time when the judge was making those decisions? I think that it would be because the right to counsel is such an ingrained right and it's a continuing right. And so, if it would come up during the trial that it was. So, the continuing right is, so in essence, under 4241A, the district court must have a hearing or, right, hold a hearing at any time that it has reasonable cause to believe. And in essence, what you're saying, that makes sense, is that you consider all of the information and if midway through the trial, you change your mind and decide there's a reasonable cause to now believe that the person is incompetent, that you're then required to hold the hearing at that point. I believe so, your honor. And I believe that throughout this trial, I'm sorry. That makes sense. I just was trying to understand why it was, I think you're right. I just was understanding why the trial activity mattered. It wouldn't show that the initial decision was wrong. What it would show was that on day two of the trial, the court should have found reasonable cause based on everything that had happened to that moment as a totality, that there was reasonable cause to believe. And if that's true, then on day two, they have to stop the trial and hold that hearing. I would think so, your honor, because that right to counsel is so guarded. And if the court has reasonable cause to believe that this defendant, that any defendant, isn't competent at some point, then the court should stop the proceeding and address that competency issue. Sorry. Oh, go ahead. Do you have a question, Judge Watts? I think Judge Richards had a question. I was interrupting him. No, no. I think that was Ms. Coleman. What I was going to ask you is, do we have any case, we know that our review of the district court's decision to or not to hold competency hearing or to declare him incompetent, we review that for abuse of discretion. Do we have any help in the case law determining what goes into the exercise of that discretion? I think that the exercise, I think that the case law is very favorable to the district court's view of, this court sort of looks at the district court's advantage of being there to observe this defendant. And so it would have to be something that was so, I believe, plainly obvious that district court would have had to call. And here, we don't have that. This court observed this defendant. One example that comes up in the cases is like an error of law, right? That if you make, if you're applying the wrong standard, so let's assume the district court here said something other than the correct standard, that would be, that could amount to an abuse of discretion. Error of law is always an abuse of discretion. I take that point, but I just wondered if, well, I asked my question. Well, I think that, like the Supreme Court in Edwards has held that the district court may constitutionally permit a defendant to represent himself as long as he is competent to stand trial. And so as long as this district court, who was in the best position to see this defendant throughout these proceedings, didn't find a reason to believe that a competency hearing was necessary, and in fact stated so on the record the morning of trial, the district court stated that he did not find a need to question this defendant's competence. He didn't believe his decision was a smart one, wasn't a wise one, and he advised against it, but that did not mean he wasn't competent to make it. And this court observed him throughout the proceedings and didn't find anything to change that opinion. And I think that this court would have to look for something obvious in the record that would change that view, and I don't think there is anything. As I stated before, the defendant acted and represented himself actively at the trial, even calling his own witnesses to rebut some of the government's evidence. Can I ask you about the second issue, the sufficiency of the evidence with respect to these, to this crime on the two counts? Yes, I think that when this court looks at the evidence in the light most favorable to the government, which is the standard, there was sufficient evidence for both counts of the indictment. The district court properly instructed the jury, and I think the only issue here as to count one is whether or not the defendant acted as such, and with the one, the defendant asserted that he was an assistant United States attorney on April 4th, 2019, to four different people. He asserted it to the deputies, Thomas and Morris, continuously telling them that he didn't have to have, that he was an assistant United States attorney, he didn't have time for this, he would get any charges they brought against him dismissed, they didn't have jurisdiction over him, and that he didn't have to have a driver's license because he was an AUSA, and that he had had charges, every time he had ever been pulled over, he had the charges dismissed because he was an AUSA. Ms. Coleman, this is just Diaz here, so, and I think you know this, acting as a government official requires more than simply a mere representation, right? So the question is, what was it in the set of facts that you've alleged to suggest that he did something more than simply boast about his feigned status as assistant U.S. attorney? Well, he wasn't just saying, I'm an AUSA, he said, I'm an AUSA, you don't have jurisdiction over me. He cited cases to them, he cited a code to them, he did it in a way, because he was, as the officer testified, trying to assert authority to prevent them from filing charges against him. It didn't work, and it doesn't have to work to be a violation, but what he did was try to act as an AUSA and assert some kind of authority over these officers, over the proceedings, that they didn't have jurisdiction, so you couldn't charge him, and even if you did, or if you charged him, it didn't matter because he would get it taken care of. He was acting as if he was an AUSA, not just saying, I'm an AUSA. He was trying to assert power and authority as an AUSA. I'm trying to recall, but I have this recollection that you probably get training every year that tells you that you cannot, if you get pulled over as an AUSA, you can't tell the officer that you're an AUSA in order to get out of the charges, that that would be an abuse of your position, and certainly sort of seems to come up in various state situations where a real AUSA or state official asserts their position as a way to get out of, or attempt to get out of charges. Do you know if that is a violation of law for you to do that? So if you said, as an AUSA, to a police officer, don't give me a ticket, I'm an AUSA, and if you do, then I'll rain down terror on you, or whatever it is that you would say. I don't know if it's a violation of law. I know it's an ethical violation. I know that we are ethically not allowed to do that, and we receive training on that because it gives it an appearance of impropriety, and it also allows, when one represents themselves as an AUSA and says, don't give me a ticket, and let's say you don't get the ticket, then you've established sort of a quid pro pro, can that officer come back to you and ask you to do them a favor like they did you a favor, and so there is. Part of the reason you get training is because if you did it, it might well be effective, right? The officer might well not be inclined or less inclined to give you a ticket than they would, you know, an average person on the street. I mean, it's its effectiveness that, you know, requires you to get training and sort of suggest that this is not mere puffery, but is instead an action attempting to get something of value, that is, not be charged with an offense. That is correct. That is why we have the training. That is why we're not allowed to do it, and that's exactly why Mr. Ziegler did it. He was trying to get these officers asserting authority over them as an AUSA, so it didn't matter if you charged me. I'll get it dismissed. I don't have time for this, and it was a continuous event. He didn't say it to just one person. He said it to four different people on that day, and he told the magistrate clerk, I shouldn't be here, I'm an AUSA, and then he told the magistrate, I'm an AUSA, I'm going to represent myself, and he wrote down code sections, U.S. code sections on his form, and as he was getting up to leave, he said, I'll go down to Charleston, take care of this, and get it dismissed. He's told them I have powerful friends. He claims to know the U.S. attorney. He was acting. Ms. Coleman, while we're on the subject of training and policy, my recollection in this case is that there's an allegation somewhere about policy regarding DOJ prosecutions and the notion that, at least in the context of these prosecutions, that there should be no prosecutions when someone impersonates an officer, as Mr. Ziegler did in this case, for his own personal benefit as opposed to the government's benefit, and I'm wondering if that's the case, why the government chose to prosecute here. Well, Your Honor, there is a policy, but that policy does not give this defendant or any defendant any rights. It is just an internal policy that is not mandatory. It's much like our petite policy. It does not mirror any rights to this defendant, and so where the United States believes that there's been a violation of the law, they can bring charges. That policy is just guidance, and so because of Mr. Ziegler's continued actions here, he did this on not just one day. He did it on another day when he went and demanded his car. He told the towing lady, Ms. King, if you don't give me my car, I'm an AUSA. I don't have to have a license. I'll name you in my We don't, we want to curtail when somebody's going around representing to be an AUSA and telling people, I will sue you. You can't charge me. This is exactly, it's the stuff, the conduct that this code section was meant to address. So there are two, sorry. No, no, correct response. Go ahead. No, I was just going to say there are two counts here, right? Correct. And it seems to me the evidence is a little thinner on one of them. If we should vacate one, what would the result be here? The defendant would still stand convicted of the second count, Your Honor. There would be essentially, I mean, he's been sentenced to time served. He has no other, nothing pending. But your representation has been because of you and the other side, because of collateral consequences, this case isn't moved. He would get his $100 special assessment back, I believe, for the, if one count was vacated and one count was not vacated. Otherwise, he would still be- Assuming he's satisfied that obligation already. Correct. Correct. I don't have anything else I would, I'd ask the court to- I think Judge Diaz had a question. Oh, okay. No, no, I'm fine. Thank you. I would ask the court to affirm the district court on both counts. And that's all. Thank you. No further questions, my colleagues? All right. We're happy to hear your rebuttal, sir. Thank you, Your Honor. As to count one, I would point out that what Mr. Ziegler said to the deputies, I don't have time for this. Take me to jail. Mr. Ziegler acquiesced to the lawful to take a fieldside sobriety test. He wouldn't blow. Any private citizen can do that, and many do. He didn't use it to get out. He was boasting. He was popping. I'm an assistant attorney, and I don't, the evidence was sufficient that he said that to all the witnesses. I don't question that, but that's all he did. Everything else was a threat or a promise or a boast of future actions he would take as a private citizen that he would win because he's a brilliant lawyer, so brilliant that he's an assistant United States attorney, which takes a lot of brilliance. It wasn't to avoid being arrested. It wasn't to affect having the charges filed. It wasn't to affect his bond. It was simply telling them, I'm going to win this case, a future case, and you're just wasting my time. Clearly irrational, but he's not acting as a United States attorney. He's telling them he is a United States attorney and that he's going to win the case in the future. No acts, just talk. Not a single act to resist any of the arrest, the transportation, the processing, the initial appearance, the arraignment, and the remand to jail. He went to jail, just like he said initially, take me to jail. That's where he went. He bonded out on April 8th, which is count two. He goes to the tow truck place. He wants his car. There's no question he wants his car, and the dispute is over his proof of ownership. He didn't own the car. What he had was a power of attorney from his mother who was deceased, a tow truck driver. You can't prove this is your car. The plates come back to a leasing company out of Georgia. I can't give you the car unless you show me a title or registration or something. Stuff about him not needing a driver's license is irrelevant. It's not the driver's license that he needs. He's not driving anywhere. The car's undrivable. It's going to be hauled away if it's given to him. He is trying to get the car without problem. Then he starts talking about Raplevin and that he's going to name her in a lawsuit. Clearly, Raplevin is a private action that any citizen can bring and has nothing to do. He's not saying the United States government is going to bring charges against you, civil or criminal. He's saying, I am going to do it as a private citizen. I agree with Ms. Coleman that policy does not create enforceable rights. I There are also cases that hold that if you require that, you're literally reading the second element of demanding a thing of value out of the statute and state. Seeking personal credit, not a violation of the statute. Seeking things that are purely personal gain. He was not asserting that he was using or entitled to use the authority of the United States government. He was simply trying to impress people. It is not a reasonable inference based on the testimony that he acted as a United States attorney with Deputy Morris, with Deputy Thomas, with Magistrate Assistant Murphy, or Magistrate Wright. That's count one on April 4th. Count two, he spoke to ownership of the car, the driver's license. He also said he didn't need a driver's license because he's a sovereign citizen, which indicates he is thinking as a private citizen. The issue wasn't whether he's allowed to drive with the tow truck driver. He threatens her with a lawsuit, which he did in fact write. He lost it, but he brought it. And there was no demand of a thing of value. It is simply him trying to impress her that he is a legal scholar and a legal expert, and he knows how to get his car back, but he didn't get his car back. He left without the car. He didn't try and take it. He didn't say that because I'm a United States government official acting on behalf of the United States, you have to give me the car. He did not do that. He spoke also, the final person who was a witness was the prosecutor of Clay County, Mr. Samples. He had a long conversation with Mr. Samples. He did tell Mr. Samples that he was a United States attorney. Obviously, Mr. Samples did not believe him, but he did not tell Mr. Samples, you know, hey, we're both prosecutors. You need to ramble. And as Mr. Samples pointed out, he speaks a hundred miles an hour. He goes from one tangent to another. He's pretty hard to follow. And that's not necessarily clear from the record of testimony, but it is how he was interacting with the deputies at the scene too. They can be conflating whether or not he's saying, I don't need a driver's license. You don't have jurisdiction. He did say I'm an assistant United States attorney, but he didn't say that is why. And if you read the testimony of all the witnesses, he never claimed that. And so I don't think they approved one, and I agree with all the other central elements of both counts were proven, but they did not prove an act is to count one or a demand of a thing of value as to count two. Thank you very much. We will take the case under advisement and I'll ask the clerk to adjourn court for the day. Thank you. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson